UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | )
|---|---|
| INCIPIENT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| INTERNATIONAL BUSINESS MACHINES | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

Case No. 1:08-cv-10613 (NG)

_____

## <u>ANSWER AND COUNTERCLAIMS</u>

Defendant International Business Machines Corporation ("IBM"), through its

undersigned attorneys, responds to the Complaint in this action as follows:

1.      IBM admits that the Complaint filed by Incipient, Inc. ("Incipient") in this

action asserts certain claims for relief as summarized in paragraph 1 but otherwise denies the

allegations in that paragraph.

2.      IBM admits the allegations in paragraph 2.

3.      IBM admits the allegations in paragraph 3.

4.      Paragraph 4 addresses the jurisdiction of the state court from which this action

has been removed, and as such does not require a response.  IBM affirmatively avers that this

Court has jurisdiction over the parties and subject matter of this action.

5.      Paragraph 5 addresses the venue of the state court from which this action has

been removed, and as such does not require a response.  IBM affirmatively avers that venue

is appropriate in this Court.

6.      IBM lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in the first sentence of paragraph 8, and on that basis those allegations are

denied.  IBM denies the remaining allegations in paragraph 6, except avers that IBM's

financial results for 2007 and descriptions of its business segments may be found in IBM's year-end public filings including its Form 10-K, to which IBM refers for its contents.

7.     IBM admits the allegations in paragraph 7.

8.     IBM denies the allegations in paragraph 8, except as follows: IBM admits that in 2004 it expressed interest in a software product that Incipient represented it had developed to provide new and more efficient ways to manage storage resources and that it further represented could be readily customized to IBM's specifications (the "Product"), as described in communications and agreements between the parties, including a Licensed Works Agreement ("LWA"), a Statement of Work ("SOW"), and associated exhibits and amendments (collectively, the "Contract").

9.     IBM denies the allegations in paragraph 9, except as follows: IBM admits that its interest in the Product was based on an understanding that its development could and would be complete and the Product ready for the marketplace on an agreed-upon schedule, pursuant to Incipient's representations and the deadlines set forth in the Contract, in order to address perceived market conditions and opportunities.

10.     IBM denies the allegations in paragraph 10, except as follows: IBM admits representatives of IBM and Incipient met in 2004 and that, thereafter, the parties entered into the Contract as of the dates set forth therein, pursuant to negotiations with Incipient's counsel at Wilmer Cutler Pickering Hale & Dorr.  IBM refers to the Contract for a description of the Product that was the subject of the Contract.

11.     IBM denies the allegations in paragraph 11, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

12.     IBM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 regarding Incipient's purported understanding, and on that

\\\NY - 081400/000397 - 1080515 v8

basis the allegations are denied, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

13.    IBM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 regarding what Incipient purportedly recognized about its own financial situation, and on that basis the allegations are denied, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

14.    IBM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 regarding Incipient's purported "impetus" and concerns, and on that basis the allegations are denied, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

15.    IBM denies the allegations in paragraph 15, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.  IBM specifically admits that the Contract is governed by New York law.

16.    IBM lacks knowledge or information sufficient to form a belief as to the truth of the allegation in paragraph 16 regarding Incipient's alleged status as a "small, privately held, unprofitable startup company with no revenues at the time," and on that basis the allegation is denied.  Paragraph 16 otherwise attempts to characterize select portions of the Contract, which is attached to the Complaint and speaks for itself, and on that basis it is denied, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

\\\NY - 081400/000397 - 1080515 v8

17.    Paragraph 17 attempts to characterize select portions of the Contract, which is attached to the Complaint and speaks for itself, and on that basis it is denied, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

18.    Paragraph 18 attempts to characterize select portions of the Contract, which is attached to the Complaint and speaks for itself, and on that basis it is denied, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

19.    Paragraph 19 attempts to characterize select portions of the Contract, which is attached to the Complaint and speaks for itself, and on that basis the allegations are denied, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

20.    IBM denies the allegations in paragraph 20, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract, and IBM refers to the Contract for the terms and conditions relevant to this paragraph.

21.    IBM denies the allegations in paragraph 21, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

22.    Paragraph 22 attempts to characterize select portions of the Contract and the amendment thereto, which are attached to the Complaint and speak for themselves, and on that basis the allegations are denied, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

23.    Paragraph 23 attempts to characterize select portions of the Contract, which is attached to the Complaint and speaks for itself, and on that basis the allegations are denied,

\\\NY - 081400/000397 - 1080515 v8

except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

24.     Paragraph 24 attempts to characterize select portions of the Contract, which is attached to the Complaint and speaks for itself, and on that basis the allegations are denied, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

25.     Paragraph 25 attempts to characterize select portions of the Contract and the amendment thereto, which are attached to the Complaint and speak for themselves, and on that basis the allegations are denied, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

26.     IBM denies the allegations in paragraph 26, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.  IBM further avers that work under the Contract involved IBM personnel in Tucson, Arizona and at other facilities.

27.     IBM denies the allegations in paragraph 27, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for its terms and conditions relevant to this paragraph.

28.     IBM lacks knowledge or information sufficient to form a belief as to costs allegedly incurred by Incipient, and on that basis the allegations in paragraph 28 are denied, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph, and it further avers that it contributed substantial resources to the project pursuant to the Contract and incurred substantial expense in its performance.

29.     IBM denies the allegations in paragraph 29, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph, and it further admits that it had not terminated the Contract as of March 1, 2005.

30.     IBM denies the allegations in paragraph 30.

31.     IBM denies the allegations in paragraph 31.

32.     IBM denies the allegations in paragraph 32, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph, and it further admits that in the fourth quarter of 2005 it had communications with Incipient concerning Incipient's compliance with the Contract, including the terms and conditions regarding testing and payment of testing costs, and the related amendment thereof.

33.     IBM denies the allegations in paragraph 33, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph, and it further admits that in the fourth quarter of 2005 it had communications with Incipient concerning Incipient's compliance with the Contract, including the terms and conditions regarding testing and payment of testing costs, and the related amendment thereof.

34.     IBM denies the allegations in paragraph 34, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph, and it further admits that in the fourth quarter of 2005, including at a meeting held in Bedford, New Hampshire, it had communications with Incipient concerning Incipient's compliance with the Contract, including the terms and conditions regarding testing and payment of testing costs, and the related amendment thereof.

35.     IBM denies the allegations in paragraph 35.

36.    IBM denies the allegations in paragraph 36, except as follows: IBM admits that Incipient made payments to IBM in December 2005 pursuant to the terms and conditions of the Contract.

37.    IBM denies the allegations in paragraph 37.

38.    IBM lacks knowledge or information sufficient to form a belief as to what Incipient would or would not have agreed to do under the inaccurately-hypothesized circumstances alleged in paragraph 38, and on that basis the allegations are denied.

39.    IBM denies the allegations in paragraph 39, except as follows: IBM avers that it attempted in good faith to work with Incipient under the Contract, consistent with the deadlines set forth in the Contract.

40.    IBM denies the allegations in paragraph 40, except as follows: IBM admits that IBM personnel, including Mr. Smelser, communicated to Incipient in late 2005 that its performance was not in compliance with the Contract, including the terms and conditions regarding the schedule and scope for the Product, and that its noncompliance was adversely affecting the Product's marketability.

41.    IBM denies the allegations in paragraph 41, except as follows: IBM admits that IBM personnel, including Mr. Smelser, communicated to Incipient in early 2006 that its performance was not in compliance with the Contract, including the terms and conditions regarding the schedule and scope for the Product and that its noncompliance was adversely affecting the Product's marketability.

42.    IBM denies the allegations in paragraph 42, except as follows: IBM admits that IBM personnel, including Mr. Smelser, communicated to Incipient in late 2005 and early 2006 that its performance was not in compliance with the Contract, including the terms and conditions regarding the schedule and scope for the Product and that its noncompliance was

adversely affecting the Product's marketability.  IBM further refers to the Contract for the terms and conditions relevant to this paragraph.

43.    IBM denies the allegations in paragraph 43, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for its terms and conditions relevant to this paragraph.

44.    IBM denies the allegations in paragraph 44, except as follows: IBM admits that it contracted with Incipient pursuant to the Contract and refers to the Contract for the terms and conditions relevant to this paragraph.

45.    IBM admits the first sentence of paragraph 45 but denies all other allegations in that paragraph.

46.    IBM admits that it received a letter dated April 5, 2006 from Incipient's counsel at Wilmer Cutler Pickering Hale & Dorr (attached to the Complaint as Exhibit F and referred to in the first sentence of paragraph 46) which IBM avers contains numerous misstatements of fact.  IBM denies all other allegations in that paragraph.

47.    IBM denies the allegations in paragraph 47, except as follows: IBM admits that it gave Incipient additional time to cure its breach of contract, which breach was not cured, and that on May 1, 2006, IBM notified Incipient by telephone and letter that the Contract was terminated for cause.  IBM further refers to the May 1, 2006 letter, attached hereto as Exhibit 1, for its details.

48.    IBM denies the allegations in paragraph 48, except as follows: IBM admits that it received a letter dated May 9, 2006 from Incipient (attached as Exhibit G to the Complaint).  IBM refers to the May 9, 2006 letter for its contents and further refers to the Contract for the terms and conditions relevant to this paragraph.

49.    The first sentence of paragraph 49 attempts to characterize select portions of the Contract, which is attached to the Complaint and speaks for itself, and the legal

implications thereof, and on that basis the allegations are denied. IBM denies the second sentence on paragraph 49.

50.    IBM denies the allegations in paragraph 50, except as follows: IBM admits that it received a copy of a letter dated July 10, 2006 from Incipient (attached as Exhibit H to the Complaint), and IBM refers to the document for its contents.

51.    IBM denies that any termination fee is or has ever been owed under the Contract, and it admits that it has not paid such a fee.

52.    IBM denies the allegations in paragraph 52.

53.    IBM denies the allegations in paragraph 53.

54.    IBM denies the allegations in paragraph 54.

55.    IBM denies the allegations in paragraph 55 to the extent those allegations are directed to IBM, and IBM lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 55, and on that basis those allegations are denied.

56.    IBM denies the allegations in paragraph 56, except as follows: IBM admits that the Contract sets forth rights as to third parties and refers to the Contract for the terms and conditions relevant to this paragraph.

57.    IBM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57, and on that basis those allegations are denied.

58.    IBM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58, and on that basis those allegations are denied.

59.    IBM denies the allegations of paragraph 59, except as follows: IBM admits that it was aware in 2006 that Incipient had business dealings with Hewlett-Packard ("HP"), that IBM personnel participated in a meeting with personnel from Incipient and HP on or

\\\NY - 081400/000397 - 1080515 v8

about January 9, 2006, and that IBM had nondisclosure and confidentiality agreements with Incipient and HP to which IBM refers for their terms and conditions.

60.    IBM denies the allegations in paragraph 60

61.    IBM denies the allegations in paragraph 61.

62.    IBM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62, and on that basis the allegations are denied.

63.    IBM denies the allegations in paragraph 63 to the extent those allegations are directed at IBM, and IBM denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63.

64.    IBM lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64, and on that basis the allegations are denied, except as follows: IBM refers to the contents of the October 5, 2006 edition of the publication titled *InfoWorld* for its contents.

65.    IBM denies the allegations in paragraph 65.

## ANSWER TO COUNT I

### Breach of Contract

66.    IBM repeats and realleges each of the allegations contained in paragraphs 1 through 65, as if fully set forth herein.

67.    IBM admits the first two sentences of paragraph 67, subject to its defenses and counterclaims, which do not provide Incipient with any basis for challenging or altering the binding nature or the terms expressly stated in the Contract; IBM denies the third sentence of paragraph 67; and IBM refers to the Contract for the terms and conditions relevant to this paragraph.

68.    IBM denies the allegations in paragraph 68.

69.    IBM denies the allegations in paragraph 69.

\\NY - 081400/000397 - 1080515 v8

70.    IBM denies the allegations in paragraph 70.

71.    IBM denies the allegations in paragraph 71.

72.    IBM denies the allegations in paragraph 72.

73.    IBM denies the allegations in paragraph 73.

74.    IBM denies the allegations in paragraph 74.

## ANSWER TO COUNT II

### Breach of the Implied Duties of Good Faith and Fair Dealing

75.    IBM repeats and realleges each of the allegations contained in paragraphs 1 through 74, as if fully set forth herein.

76.    IBM denies the allegations in paragraph 76.

77.    IBM denies the allegations in paragraph 77.

78.    IBM denies the allegations in paragraph 78.

## ANSWER TO COUNT III

### Unfair or Deceptive Trade Practices

79.    IBM repeats and realleges each of the allegations contained in paragraphs 1 through 78, as if fully set forth herein.

80.    IBM denies the allegations in paragraph 80.

81.    IBM denies the allegations in paragraph 81.

82.    IBM denies the allegations in paragraph 82.

83.    IBM denies the allegations in paragraph 83.

84.    IBM denies the allegations in paragraph 84.

85.    IBM denies the allegations in paragraph 85.

## FIRST AFFIRMATIVE DEFENSE

86.    The Complaint fails to state a claim on which relief can be granted.

\\NY - 081400/000397 - 1080515 v8

## SECOND AFFIRMATIVE DEFENSE

87.     Incipient's claims are barred by the terms of the parties' agreements, which authorized and/or permitted the conduct complained of.

## THIRD AFFIRMATIVE DEFENSE

88.     Incipient's claims for breach of contract are barred by IBM's performance of its contractual obligations to Incipient.

## FOURTH AFFIRMATIVE DEFENSE

89.     Incipient has not suffered any damages as a result of the alleged conduct of IBM.

## FIFTH AFFIRMATIVE DEFENSE

90.     Incipient's claims are barred in whole or in part by the course of conduct of the parties.

## SIXTH AFFIRMATIVE DEFENSE

91.     Incipient's claims are barred in whole or in part by Incipient's breach of the parties' contract.

## SEVENTH AFFIRMATIVE DEFENSE

92.     Incipient's claims are barred in whole or in part by the doctrine of equitable estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

93.     Incipient's claims should be barred in whole or in part as a result of the misrepresentations set forth in paragraphs 7 through 16 and 20 through 35 below.

## NINTH AFFIRMATIVE DEFENSE

94.     Incipient's claims are barred in whole or in part by the doctrine of waiver.

### TENTH AFFIRMATIVE DEFENSE

95.     Incipient's claims are barred in whole or in part by the doctrine of unclean

hands.

### ELEVENTH AFFIRMATIVE DEFENSE

96.     Incipient's claims are barred in whole or in part by the Contract and the

doctrine of laches, because the claims were not brought within the two-year limitations period

set forth in Section 15.3 of the Licensed Works Agreement.

### TWELFTH AFFIRMATIVE DEFENSE

97.     Incipient's claim for breach of the implied duties of good faith and fair dealing

is barred because IBM acted in good faith.

### THIRTEENTH AFFIRMATIVE DEFENSE

98.     Incipient's claim that IBM engaged in unfair or deceptive trade practices in

violation of Massachusetts General Law chapter 93A § 11 is barred by the choice of law

provision in the Contract and because that statute does not apply to the conduct alleged in the

Complaint.

99.     IBM reserves the right to add those defenses it deems necessary to its defense

during or upon the conclusion of discovery.

### RESPONSE TO INCIPIENT'S PRAYER FOR RELIEF

IBM denies that Incipient is entitled to any of the relief sought.

WHEREFORE, IBM prays for entry of judgment:

a.      Dismissing the Complaint with prejudice against plaintiff;

b.      Awarding IBM the costs and disbursements of this action, including

reasonable attorney's fees; and

c.      Awarding IBM such other and further relief as the Court deems just and

proper.

- 13 -

## COUNTERCLAIMS

IBM, as and for its counterclaims against Incipient, states as follows:

1.      Counterplaintiff IBM seeks damages and other relief to remedy Counter-defendant Incipient's fraudulent and negligent misrepresentations in inducing IBM to enter into and amend a contract and to make available significant resources, money, equipment and know-how for development, improvement and testing of an Incipient product as well as for breaches of contract and violations of the duty of good faith and fair dealing.

### Parties and Jurisdiction

2.      IBM is a New York corporation with its principal place of business in Armonk, New York.

3.      Incipient is a Delaware corporation and has its principal place of business in Waltham, Massachusetts.

4.      The court has jurisdiction over these counterclaims under 28 U.S.C. §§ 1331 and 1367(a), because there exists complete diversity of citizenship between the parties, the matter in controversy exceeds $75,000 exclusive of interest and costs, and the claims asserted are so related to the acts and occurrences asserted in the Complaint filed by Incipient that they forms part of the same case and controversy within the meaning of Article III of the United States Constitution.

### Factual Allegations

5.      In early 2004, IBM and Incipient began discussing a business arrangement under which Incipient would provide IBM with a software product (the "Product") based on an Incipient-developed product referred to by Incipient as the Neptune product.  In October 2004, the parties entered into the contract that is the subject of Incipient's Complaint in this action (the "Contract").

\\\NY - 081400/000397 - 1080515 v8

6.    In 2004, obtaining a contractual and business relationship with IBM was critical to the future success of Incipient's business, because IBM could provide Incipient with the market credibility and the technical know-how and support needed to commercialize its Neptune product.  As a result, Incipient had a strong motivation to "sell" IBM on the Neptune product and on Incipient's willingness and ability to provide IBM with a customized version of the product with the functionality and on a schedule desired by IBM.

7.    During the first ten months of 2004, in order to induce IBM to enter into the Contract and to commit resources, money, equipment and know-how to the project, Incipient made representations of fact, which Incipient knew or should have known were materially false and misleading, including but not limited to the following:

    a.    That Incipient's Neptune product was in the final stage of development—indeed, that the software code supporting Neptune would be and was completed by August 30, 2004, and that the Neptune product was on track for commercial release in the Fourth Quarter of 2004;

    b.    That Incipient's Neptune product embodied software code of sufficient quality and functionality that it could be used as the platform from which Incipient could and would readily customize the Product to IBM's specifications;

    c.    That Incipient could and would complete two phases of testing on the Product prior to the beginning of IBM's testing of the Product;

    d.    That Incipient possessed the capability and had allocated sufficient resources to complete the software code for the Product in 2005;

    e.    That the Product capabilities could support both Cisco and Brocade switches and numerous storage vendor devices in line with IBM's interoperability roadmap, and would include such features as Remote Copy and the capacity to support 1-4 nodes; and

- 15 -

f.    That the Neptune code existed in a form that provided the foregoing scope of functionality, capabilities, and features; and

g.    That Incipient possessed the capability and had allocated sufficient resources to adapt the Neptune code so as to meet the schedule and demands of the project.

8.    These representations were made by Incipient in multiple meetings and discussions with IBM representatives during the first 10 months of 2004, including for example in presentations made by Incipient to IBM on or about June 21, 2004, and July 28, 2004, and during a meeting on or about October 19, 2004, shortly before IBM executed the Contract. The Incipient personnel making these representations included Incipient's CEO, Ric Calvillo, and its CFO, Edward Durkin.

9.    Moreover, at a meeting in or about June 2004, Incipient represented to IBM that Incipient had in place already two paying contracts, one with an OEM systems company for a storage virtualization product and another with a switch vendor.

10.    IBM, acting in reliance on Incipient's representations, entered into the Contract in October 2004. As part of the Contract, IBM and Incipient agreed to a Licensed Works Agreement ("LWA") and a Statement of Work ("SOW"). *See* Exhibits A & B to the Incipient Complaint. Section 3.1 of the SOW provided that certain Licensed Works would be delivered according to an agreed-upon schedule (referred to in the Contract alternatively as "Attachment F" or "Project Schedule"). *See* Exhibit C to the Incipient Complaint.

11.    Following execution of the Contract, Incipient continued to make the foregoing representations of fact and further made additional representations regarding its willingness and ability to complete the project consistent with the agreed upon scope and schedule, which representations further induced IBM to enter into amendments to the Contract and to continue to make available resources, money, equipment and know-how.

- 16 -

Those additional representations, which Incipient knew or should have known were materially false and misleading, included, but are not limited to, the following:

a.  That Incipient possessed the capability and had allocated sufficient resources to address the integration of the IDS Database into the Product, pursuant to agreed-upon deadlines.  Although the parties agreed to that integration shortly after the Contract was executed, after IBM notified Incipient of its intent to terminate the Contract, Incipient disclosed in an April 5, 2006 letter from its legal counsel that it lacked the capability and resources to complete its contractual obligations using the IDS Database;

b.  That Incipient had resolved issues associated with integrating the IDS Database and other revisions to the Product, thus requiring a delay of only one week from the agreed-upon April 21, 2006 date by which it had been obligated to make the product generally available.  In fact, unbeknownst to IBM, Incipient was aware of substantial issues with its software code that would preclude Incipient from making the product generally available by April 28, 2006 under the revised schedule to which they had just committed;

c.  That Incipient possessed the capability and had allocated sufficient resources to develop the Product with full volume management functionality, pursuant to agreed-upon deadlines, and that such functionality in fact was already included in the software code used as a platform for the Product.  Although Incipient agreed to and endorsed the inclusion of such functionality in the Product in the Spring of 2005, after IBM notified Incipient of its intent to terminate the Contract, Incipient disclosed in an April 5, 2006 letter from its legal counsel that it lacked the capability and resources to include full volume management functionality in the Product; and

- 17 -

    d.    That Incipient possessed the capability and had allocated sufficient resources to meet various other proffered and agreed-upon scope requirements and scheduling deadlines, the falsity of which Incipient in fact knew or should have known at the time the representations were made.

12.    From October 2004 until late 2005, Incipient failed to meet its obligations under the Contract, by failing to meet contractual deadlines and by failing to develop or provide Licensed Works with the functionality called for by the Contract.

13.    During the course of the Project, Incipient benefited from among other things, IBM's development and testing expertise.

14.    In late 2005, the parties agreed to amend the Project Schedule, and new deadlines were set for the completion of various tasks. *See* Exhibit D to the Complaint.

15.    To induce IBM to agree to amend the Project Schedule and to continue to commit resources, money, equipment and know-how to the project, Incipient made representations of fact, which Incipient knew or should have known were materially false and misleading, including that Incipient had identified and addressed reasons for its past failure to comply with the Project Schedule and that it could and would meet the new deadlines for completion of each task set in the amended Project Schedule.

16.    During the first quarter of 2006, Incipient failed to meet the new deadlines for completion of tasks set forth in the amended Project Schedule and failed to develop or provide Licensed Works with the functionality called for by the Contract. To the contrary, Incipient advised IBM that it would not be able to deliver a product with the required functionality in 2006.

17.    On March 14, 2006, IBM notified Incipient that if it did not cure its breaches and provide adequate assurances of its willingness and ability to perform the Contract within 30 days, IBM intended to terminate the Contract for cause. *See* Exhibit E to the Complaint.

\\NY - 081400/000397 - 1080515 v8

18.     Although counsel for Incipient, Wilmer Cutler Pickering Hale & Dorr, responded to the March 14, 2006 IBM letter on April 5, 2006 (*see* Exhibit F to the Complaint), that response did not provide the requested assurances, nor did Incipient act to cure its breaches.

19.     On May 1, 2006, with Incipient having neither cured its breach nor provided adequate assurances, IBM notified Incipient of IBM's decision to terminate the Contract.  *See* Exhibit 1 hereto.

### First Claim
### Fraud and Deceit

20.     IBM repeats and realleges each of the allegations contained in paragraphs 1 through 17, as if fully set forth herein.

21.     Incipient has made representations of purported fact to IBM that, when made, were materially false and/or misleading.

22.     At the time it made the representations, Incipient knew or should have known that they were materially false and/or misleading.

23.     Upon information and belief, Incipient made the representations with the intent to deceive IBM and for the purpose of inducing IBM to enter into the Contract and to take other actions beneficial to Incipient, and the representations did in fact deceive IBM and induce it to enter into contractual and business relationships with Incipient and to commit resources and technology to the project with Incipient.

24.     The representations were known by Incipient at the time they were made to be false and/or misleading and/or were made with reckless disregard for their truth and accuracy.

25.     IBM reasonably and justifiably relied on the representations made by Incipient in agreeing to do business with Incipient, entering into the Contract with Incipient, amending the Contract in a manner beneficial to Incipient, and committing resources, equipment and facilities to the project with Incipient.

26.    As a proximate result of the foregoing, IBM provided benefits to Incipient, including but not limited to, know-how, development assistance, and testing, as well as expertise in designing and marketing virtualization storage products, which benefits Incipient should not be permitted to retain and should be required to disgorge.

27.    As a proximate result of Incipient's fraud and misrepresentations, IBM has been injured and is entitled to damages, disgorgement of all benefits wrongfully obtained by Incipient as a result of the foregoing, and an accounting of all such benefits obtained, as well as other relief, in amounts to be determined at trial.

## Second Claim
### Negligent Misrepresentation

28.    IBM repeats and realleges each of the allegations contained in paragraphs 1 through 24, as if fully set forth herein.

29.    Incipient has made representations of purported fact to IBM that, when made, were materially false and/or misleading.

30.    At the time it made the representations, Incipient should have known the representations were false and/or misleading.

31.    At the time it made the representations, as a result of its discussions with IBM, Incipient knew or should have known that IBM intended to rely and act upon the representations for a serious purpose.

32.    At the time it made the representations, Incipient owed IBM a duty of care whereby IBM had the right to rely upon the representations and Incipient had the duty to act with care in making such representations.  Such duty was based on Incipient's unique knowledge of its own product and capabilities and the expertise of its executives in storage systems and virtualization.

33.    Upon information and belief, Incipient was negligent in making the representations to IBM for the purpose of inducing IBM to enter into the Contract and to take

other actions beneficial to Incipient, and the representations did in fact deceive IBM and induce it to enter into contractual and business relationships with Incipient and to commit resources and technology to the project with Incipient.

34.    IBM intended to rely and act upon, and in fact did justifiably rely on the representations made by Incipient in agreeing to do business with Incipient, entering into the Contract with Incipient, amending the Contract in a manner beneficial to Incipient, and committing resources, equipment and facilities to the project with Incipient.

35.    As a proximate result of Incipient's negligent misrepresentations, IBM has been injured and is entitled to damages, disgorgement of all benefits wrongfully obtained by Incipient as a result of the foregoing, and an accounting of all such benefits obtained, as well as other relief, in amounts to be determined at trial.

**Third Claim**
**Breach of Contract**

36.    IBM repeats and realleges each of the allegations contained in paragraphs 1 through 24, as if fully set forth herein.

37.    Incipient and IBM entered into a valid and binding Contract, which provided that Incipient would provide Licensed Works with specified functionality to IBM according to an agreed-upon schedule.

38.    IBM performed its obligations under the Contract.

39.    Incipient breached the Contract by failing to meet contractual deadlines and by failing to develop or provide Licensed Works with the functionality called for by the Contract.

40.    Incipient failed to cure its breach or provide adequate assurances of its willingness and ability to perform the Contract within the time period provided for in the Contract.

- 21 -

41.     As a result of Incipient's breach of contract, IBM has suffered contract damages in an amount equal to the loss of the value of the Product that Incipient promised to provide under the Contract on the schedule provided for in the Contract.

42.     As a result of Incipient's breach of contract, IBM further has suffered reliance damages in an amount equal to the resources that IBM invested in the Contract project and development of the Product, including, but not limited to, the value of the time expended by IBM employees in working on the project and the cost of materials and equipment obtained or used by IBM in connection with the project.

43.     As a result of Incipient's breach of contract, Incipient has also been unjustly enriched by virtue of its receipt of information, know-how, and assistance from IBM under the Contract, which Incipient has benefited from in developing and marketing its own products, despite the fact that Incipient refused to perform and interfered with IBM's performance of the Contract.  Incipient should not be permitted to benefit from its breach of its obligations to IBM and should be required to disgorge those benefits unjustly received to IBM as a result of the foregoing.

44.     As a result of Incipient's breach of contract and its interference with IBM's performance of that contract, IBM is entitled to monetary damages and to restitution of the benefits unjustly obtained by Incipient in amounts to be determined at trial.

<u>Fourth Claim</u>
**Breach of Duty of Good Faith and Fair Dealing**

45.     IBM repeats and realleges each of the allegations contained in paragraphs 1 through 33, as if fully set forth herein.

46.     Incipient has breached the duty of good faith and fair dealing that is implied in the Contract under governing New York law.  Incipient breached that duty by failing to devote sufficient resources and efforts to develop the Product on the schedule and with the functionality required in the Contract, by misrepresenting the state of its software

- 22 -

development and work during the course of the parties dealings in order to induce IBM into the Contract, by misleading IBM into amending the Contract in late 2005 on false pretenses, and by refusing to perform its obligations under the Contract and failing to cure breaches of the Contract by Incipient or to provide requested assurances of its willingness and ability to perform the Contract in early 2006.

47.    As a result of Incipient's breach of the implied duty of good faith and fair dealing, IBM is entitled to contract and reliance damages and to restitution in amounts to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, IBM prays for entry of judgment granting:

a.    IBM's counterclaim for damages in an amount to be determined by the Court;

b.    Exemplary damages in an amount to be determined by the Court; and

c.    For such other and further relief as the Court deems just and proper.

\\\NY - 081400/000397 - 1080515 v8

Respectfully submitted,

International Business Machines Corp.,

By its attorneys,

/s/ Jennifer M. Ryan
Thomas E. Dwyer (BBO# 139660)
Jennifer M. Ryan (BBO# 661498)
**DWYER & COLLORA, LLP**
600 Atlantic Avenue
Boston, MA  02210
Tel:  (617) 371-1000
Fax:  (617) 371-1037
tdwyer@dwyercollora.com
jryan@dwyercollora.com

Steven J. Routh (admitted pro hac vice)
**HOGAN & HARTSON, LLP**
555 Thirteenth Street, N.W.
Washington, D.C.  20004-1109
Tel:  (202) 637-5600
Fax:  (202) 637-5910
SJRouth@hhlaw.com

William F. Haigney (admitted pro hac vice)
Heather J. Kukla (admitted pro hac vice)
**HOGAN & HARTSON, LLP**
875 Third Avenue
New York, NY  10022
Tel:     (212) 918-3000
Fax:     (212) 918-3100
WFHaigney@hhlaw.com
HJKukla@hhlaw.com

May 12, 2008

**CERTIFICATE OF SERVICE**

I, Jennifer R. Ryan, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing, and both email and paper copies will be sent to those indicated as non-registered participants on May 12, 2008.

/s/ Jennifer M. Ryan
_____
Jennifer M. Ryan

\\\NY - 081400/000397 - 1080515 v8

\\NY - 081400/000397 - 1080515 v8